# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

| | |
|---|---|
| **DEBBRA J. HILL,** | **CV 09-136-BLG-RFC-CSO** |
| **Plaintiff,** | |
| **vs.** | **FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |
| **MICHAEL J. ASTRUE, Commissioner of Social Security,** | |
| **Defendant.** | |

Plaintiff Debbra J. Hill ("Hill") initiated this action to obtain judicial review of Defendant Commissioner of Social Security's ("Commissioner's") decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383(c).  Complt. (Court Doc. 1).  On January 6, 2010, this case was referred to the undersigned for all pretrial proceedings. Court Doc. 10.

Now pending are the parties' cross-motions for summary

judgment.  Court Docs. 13 (Hill's motion) and 16 (Commissioner's motion).  For reasons stated below, the Court recommends that Hill's motion be denied, the Commissioner's motion be granted, and that the decision denying DIB and SSI be affirmed.

## I.  <u>PROCEDURAL BACKGROUND</u>

Hill filed her DIB and SSI applications on December 7, 2006, alleging that she has been unable to work since April 4, 2004.  Tr. 34, 167-76.  She alleges she has been unable to work due to the following: unstable diabetes, severe depression, eyesight problems, anxiety, a back injury and associated problems, a seizure disorder, bi-polar disorder, unpredictable euphoria, problems being around people, arm problems, ADHD, two small strokes, a right shoulder impairment, memory and concentration problems, and disorganized thinking.  Tr. at 203.

The Social Security Administration ("SSA") denied Hill's applications initially and upon reconsideration.  Tr. at 132-37.  On September 24, 2008, an Administrative Law Judge ("ALJ") held a video hearing.  Tr. at 30-131.  On April 6, 2009, the ALJ issued a written decision denying Hill's claims.  Tr. at 8-29.  On August 28, 2009, after

the Appeals Council denied Hill's request for review, the ALJ's decision

that Hill was not disabled within the meaning of the Act became final

for purposes of judicial review.  Tr. at 1-4; 20 C.F.R. §§ 404.981,

416.1481 (2009).  This Court has jurisdiction pursuant to 42 U.S.C. §

405(g).

## II.   STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the

Commissioner's decision only where the decision is not supported by

substantial evidence or where the decision is based on legal error.  Ryan

v. Commr. of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); 42 U.S.C. §

405(g).  "Substantial evidence is more than a mere scintilla, but less

than a preponderance."  Id. (citing Bayliss v. Barnhart, 427 F.3d 1211,

1214 n. 1 (9th Cir. 2005) (internal quotation marks omitted)).  "It is such

relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Id. (internal quotation marks and citation

omitted).  The Court must consider the record as a whole, weighing both

the evidence that supports and detracts from the Commissioner's

conclusion, and cannot affirm the ALJ "by isolating a specific quantum

of supporting evidence." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

## III.   **BURDEN OF PROOF**

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." Schneider v. Commr. of Soc. Sec. Admin., 223 F.3d 968, 974

(9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1.    The claimant must first show that he or she is not currently engaged in substantial gainful activity.  Tackett, 180 F.3d at 1098.

2.    If not so engaged, the claimant must next show that he or she has a severe impairment.  Id.

3.    The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments").  Id.  If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4.    If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here.  Id.  "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step."  Id. at 1098-99.

5.    If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience.  20 C.F.R. §

404.1520(g).  If an adjustment to other work is possible then the claimant is not disabled.  <u>Tackett</u>, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform.  <u>Id</u>.  The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2.  <u>Id</u>.  If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits.  <u>Id</u>.

## IV.   <u>THE ALJ's OPINION</u>

The ALJ followed the five-step sequential evaluation process in considering Hill's claims.  The ALJ first found that Hill had not engaged in substantial gainful activity since her alleged onset date of April 4, 2004.  Tr. at 10-11.

Second, the ALJ found that Hill has the following severe impairments: "diabetes mellitus; status post right rotator cuff repair times 2; bipolar disorder; mixed personality disorder, not otherwise specified; anxiety; and borderline intellectual functioning[.]" Tr. at 11.

-6-

Third, the ALJ found that Hill does not have an impairment or a combination of impairments that meet or medically equal any one of the impairments in the Listing of Impairments.  Tr. at 11-14.

Fourth, the ALJ found that Hill has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently.  She can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday.  She can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday.  She can push and/or pull on a frequent basis with her right upper extremity.  She can climb ramps/stairs, balance, stoop, kneel, crouch, and crawl frequently.  She can climb ladders, ropes, or scaffolds occasionally.  She can reach overhead occasionally with her right arm.  She should avoid concentrated exposure to hazards such as moving machinery and unprotected heights. She should perform work that requires only occasional interactions with the public and co-workers and that interaction should be on a brief, superficial basis.  She can ask simple questions or request assistance, and accept instructions and respond appropriately to criticism from supervisors.  She can understand, remember, and carry out very short and simple work instructions.  She can remember locations and work-like procedures.  She can maintain attention and concentration for extended periods to perform simple work tasks.  She can perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  She can sustain an ordinary routine without special supervision.  She can make simple work-related decision[s].  She can complete a normal

workday and workweek without interruptions from
psychologically based symptoms, and she can perform at a
consistent pace without an unreasonable number and length
of rest periods.  She can respond appropriately to changes in
the work setting.  She can travel in unfamiliar places or use
public transportation.  She can set realistic goals or make
plans independently of others.

Tr. at 14-15.

The ALJ also found that Hill is unable to perform any of her past

relevant work as either a fast food worker or as a certified nurse's

assistant ("CNA").  Tr. at 27.  He found that the CNA job required her

to perform work that was medium to heavy in exertional demand, which

exceeds her current RFC.  Id.  Also, the ALJ noted that both past jobs

required Hill to interact with others more frequently than she is now

able to because of her current RFC.  Id.

Fifth, the ALJ found that Hill could perform jobs that exist in

significant numbers in the national economy in light of her age (46

years old at the time of her alleged onset date, which is defined as a

younger individual – but which subsequently changed to the closely-

approaching-advanced-age by the time of the ALJ's decision), education

(at least high school), and RFC.  Tr. at 27-28.  Consequently, the ALJ

found that Hill was not disabled.  Tr. at 28-29.

## V.  <u>PARTIES' ARGUMENTS</u>

Hill argues that the ALJ erred in denying her DIB and SSI claims. Brief in Support of Pltf's Mtn. for Summary Judgment (Court Doc. 14) at 7-31.  In general, Hill argues that the ALJ's errors fall into three principal categories: (1) the ALJ ignored or failed to consider various portions of evidence favorable to Hill's position; (2) the ALJ improperly discredited Hill's subjective complaints; and (3) the ALJ failed to include in the hypothetical question to the vocational expert all of Hill's limitations.  Id.

Hill contends the ALJ ignored or failed to consider:  (1) "uncontradicted findings that [Hill's] mental limitations precluded her ability to perform more than 20 hours per week[,]" id. at 7, 9; (2) "uncontradicted side effects from [Hill's] medication use as well as the symptoms of her uncontrolled diabetes[,]" id. at 7-8, 12-13; (3) that exacerbation of Hill's symptoms were not the result of Hill not taking her medications nor the result of Hill using illicit drugs, id. at 8; (4) "uncontroverted testimony of the employment specialist who witnessed

[Hill] in a manic phase at work in which [Hill] was edgy" requiring her "to intervene to get [Hill] from work[,]" id. at 8-9; (5) "requirements by the vocational evaluator that [Hill] required both structured support upon entry into whatever career she chooses, along with upgrading mathematics prior to re-entry into an education program ... prior to beginning a new career direction[,]" id. at 9-10; (6) opinions of Hill's treating medical sources, id. at 14-18, 20, 23, 25-27; and (7) evidence of Hill's indigence and inability to pay for needed medications as a cause for her occasional failure to take prescribed medicines, id. at 19-23.

With respect to the ALJ's credibility determination, Hill argues that the ALJ erred in failing "to set forth any description of activities with such specificity as to allow the reviewing court to determine if such activities are inconsistent with [Hill's] claim of disability." Id. at 29-30.

Finally, Hill argues that the ALJ failed to ask the vocational expert a hypothetical question that included all of Hill's limitations as established by her treating physicians and as Hill described them. Id. at 30-31.

In response, the Commissioner argues that the ALJ's decision is

supported by substantial evidence and is free from legal error.  Deft's
Br. (Court Doc. 17) at 2.  First, the Commissioner argues that the ALJ
neither ignored nor failed to consider evidence favorable to Hill's claim.
Rather, the Commissioner argues, the ALJ properly discussed the basis
for his rejection of significant probative evidence, as he was required to
do.  Id. at 2-3.

Second, the Commissioner argues that the ALJ properly found
that Hill's subjective complaints were not entirely credible.  Id. at 3.
The Commissioner argues that the ALJ: (1) provided more than a dozen
clear and convincing reasons for his credibility determination, id. at 4-6;
(2) properly considered Hill's noncompliance with treatment, her drug-
seeking behavior, and her illicit drug use in assessing her credibility, id.
at 6-8; (3) properly evaluated Hill's activities of daily living and part-
time work, id. at 8-10; (4) noted Hill's claims of medication side effects
and diabetes-related urinary problems in assessing her credibility, id. at
10-11; and (5) properly considered Hill's claims of anxiety and panic
attacks and all relevant opinion evidence in making his determination,
id. at 11-14.

Third, the Commissioner argues that the ALJ properly questioned the vocational expert with a hypothetical question that included all of Hill's substantiated limitations.  Id. at 14-15.

Finally, the Commissioner argues that if the Court does find that the Commissioner's decision is not supported by substantial evidence, the Court should remand for further administrative proceedings rather than reverse for an award of benefits.  Id. at 15-17.

## VI.   <u>DISCUSSION</u>

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error.  The Court is not permitted to re-weigh the evidence.

For the reasons set forth below, and applying controlling Ninth Circuit authority, the Court finds that the Commissioner's decision is based on substantial evidence in the record, and is free of legal error. Therefore, the Court recommends that it be affirmed.

### A.   <u>ALJ's Consideration of Evidence</u>

In evaluating Hill's claims, the ALJ was required to "make fairly detailed findings in support" of his decision "to permit courts to review

those decisions intelligently." <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394 (9th Cir. 1984) (citation omitted).  In doing so, an "ALJ does not need to discuss every piece of evidence" and "is not required to discuss evidence that is neither significant nor probative[.]" <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations and citations omitted).

Here, the ALJ issued an extremely detailed 22-page decision that includes approximately 12 pages discussing relevant medical evidence, opinions, and testimony.  Tr. at 15-27.  The ALJ prefaced this discussion by noting that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" in accordance with Social Security regulations.  Tr. at 15.  While this declaration is not, by itself, definitive proof that the ALJ considered all evidence that he said he considered, it does demonstrate his awareness of his obligation to do so.

More significantly, the ALJ also meticulously reviewed, as discussed further below, his rationale for rejecting significant and

probative evidence in his assessment of Hill's credibility and RFC.  Tr.

at 15-27.  He also set forth in his written decision the evidence – which

the Court concludes is substantial – that informed and supported his

conclusion with respect to Hill's claim of disability.  Id.  For these

reasons, and after the Court's own review of the entire record, the Court

finds unpersuasive Hill's argument that the ALJ "ignored" or "failed to

consider" evidence favorable to her claims for DIB and SSI.  In short,

the ALJ did not err.

William respect to Hill's specific claims of error, the Court concludes

that:

(1) the ALJ did not ignore or fail to consider "uncontradicted

findings" that Hill's mental limitations precluded her from working

more than 20 hours per week.  The ALJ noted that Hill had been

working more than 20 hours a week as a cashier since April 15, 2007,

despite her mental health impairments.  Tr. at 16.  Also, he noted that

Hill's treating therapist, Ms. Coffey,

> wrote a letter to [Hill's] employer on March 18, 2008[,] which
> confirmed that [Hill] had addressed some issues she was
> having troubles with and Ms. Coffey determined there were
> no recognizable clinical reasons why [Hill] would not be able

to return back to work ... [and] Ms. Coffey released her back
to work with no restrictions.

Tr. at 22.

(2) the ALJ did not ignore or fail to consider "uncontradicted" side
effects from Hills' medication use or her symptoms related to diabetes.
He noted that medical treatment notes from Clackamas County Mental
Health in November 2008 indicated that Hill "had no complaints with
her medications."  Tr. at 20 (citing Tr. at 428).  These same records
indicate that Hill was taking medication for urinary incontinence
related to her diabetes, but did not indicate that the condition caused
significant limitations on a regular basis.  Id.

(3) the ALJ noted repeatedly that evidence of record indicated
Hill's symptoms were often the result of her failure to follow prescribed
treatment or were related to illicit drug use.  Tr. at 17-18; see also,
infra.

(4) the ALJ thoroughly addressed Hill's claims that panic attacks,
anxiety, and manic episodes interfered with her ability to work.  Tr. at
16 (referencing Tr. at 662) and Tr. at 23-24 (referencing Tr. at 58-60).

(5) the ALJ neither "ignored" nor "failed to consider" the opinions

-15-

of Hill's treating medical sources, but rather properly considered them.
The ALJ reviewed the opinions and thoroughly explained his rationale
for either accepting or rejecting them.  <u>See</u>, <u>e.g.</u>, Tr. at 21-22, 24
(agreeing with Tammi Coffey's conclusion that Hill had marked
limitations in understanding, remembering, and carrying out detailed
instructions, but disagreeing with her conclusion that Hill had marked
limitations carrying out short, simple instructions or interacting
appropriately with others because of inconsistency with her own records
and with Dr. Monte Kuka's testimony); Tr. 23-24 (evaluating Dr. Kuka's
testimony and affording his opinion that Hill "would do best with only
occasional interactions with co-workers on a casual basis" "significant
weight"); Tr. at 24 (noting treatment notes of Sally Lydon, CRNP,
reflecting Hill's drug-seeking behavior and failure to follow prescribed
treatment); Tr. at 25 (reviewing treatment records from Lynn Johnson,
Ph.D., and noting they were inconsistent with Hill's reports of severe,
frequent panic attacks); Tr. at 25-26 (discussing reports of Dr. Mozer,
who observed Hill's drug-seeking behavior and improved mood
symptoms after treatment); Tr. at 25-26 (noting records of Jerry

Stenehjem, MSW, that showed that Hill agreed that she was experiencing few, if any, periods of mania); and Tr. at 26 (observing that records of Timothy W. Urell, D.O., from August 2008 indicated that Hill's physical examination was unremarkable with no neurological deficits noted and that listed migraines as an inactive problem for Hill).

(6) the ALJ did not ignore or fail to consider Hill's claims of indigence as a reason for her failure to comply with medical treatment. It is quite obvious from the record and the ALJ's written opinion that he was well-aware of Hill's financial status during the pendency of her claims.  The medical records are replete with descriptions of the medications Hill has taken over the years as well as her treatment at the Deering Clinic and other public medical care facilities.  At her hearing, she testified that she has no health insurance, but participates with the mental health program.  Tr. at 77-78.  Also, the record contains multiple references to medication assistance programs (Tr. at 418, 434, 599, 609, 637, 703), help Hill obtained from her case manager in getting medications (Tr. at 522-23), and medications and insulin she received free-of-charge from health care providers (Tr. 378, 398, 409, 506-07,

617-23, 703).  With all of this evidence indicating that Hill had access to medications, it would not be necessary for the ALJ to discuss in detail her alleged inability to obtain medications because of indigence as a reason for her failure to comply with prescribed treatment.

### B.   ALJ's Assessment of Hill's Credibility

Hill argues that the ALJ's finding that Hill's "testimony does not have credibility is without basis."  Court Doc. 14 at 29.  She argues that the ALJ "failed to set forth any description of activities with such specificity as to allow the reviewing court to determine if such activities are inconsistent with [Hill's] claim of disability."  Id. at 29-30.

To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989).  However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)

(quoting <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995)).

An ALJ may take the lack of objective medical evidence into consideration when assessing credibility.  <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1196 (9th Cir. 2004). Inconsistencies in testimony may also be factored in such an assessment.  <u>Orn v. Astrue</u>, 495 F.3d 625, 636 (9th Cir. 2007) (citing <u>Fair</u>, 885 F.2d at 603).

The ALJ must also consider the factors set forth in SSR 88-13 including:

A.   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

B.   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

C.   Type, dosage, effectiveness, and adverse side-effects of any pain medication;

D.   Treatment, other than medication, for relief of pain;

E.   Functional restrictions; and

F.   The claimant's daily activities.

SSR 88-13, *superseded in part on other grounds*, 95-5P; <u>see</u> <u>also</u> 20 C.F.R. § 404.1529(c)(3).

-19-

If, after engaging in this analysis, the ALJ rejects a claimant's subjective testimony of the severity of symptoms, the ALJ must cite specific, clear, and convincing reasons for doing so.  <u>Smolen</u>, 80 F.3d at 1283-84 (citing <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993)).

Here, the Court concludes that the ALJ gave specific, clear, and convincing reasons for finding that Hill was not entirely credible with respect to allegations that she is incapable of all work activity.   As an initial matter, however, the Court notes that the ALJ found Hill credible to the extent that she alleged shoulder pain with heavy lifting and difficulty maintaining concentration, persistence, and pace to perform complex or detailed tasks.  He, therefore, reduced her RFC accordingly to accommodate those limitations.  Tr. at 15.  Thus, the ALJ did not entirely reject Hill's allegations as she seems to suggest.  Rather, the ALJ was careful to parse out those allegations that he found credible from those that he found incredible, as he was required to do.  And, the ALJ gave the following clear and convincing reasons for rejecting other portions of Hill's allegations and making his credibility determination.

First, the ALJ found that Hill's medical history over time is not necessarily consistent with her claim of disabling symptoms and limitations. He noted that during the three-year period before she claimed that she became disabled, Hill successfully worked full time for the same employer as a CNA at a nursing home despite having major depressive disorder, bipolar disorder, and anxiety. The ALJ also noted that, for some of this same time, Hill cared for her 80-year-old grandmother, who suffered from dementia. Tr. at 15-16.

Second, the ALJ noted that, since her alleged onset date, Hill has been able to function and do relatively well with her mental health impairments when she complies with her treatment regimen and takes her prescribed medications. He noted that, since April 15, 2007, Hill was working more than 20 hours each week as a store cashier despite her claimed impairments. The ALJ emphasized that Hill's duties in this job include: "dealing with the public, running a cash register, making appropriate change, stocking shelves, sacking the groceries or other purchased items, inventory management, and training new employees." Tr. at 16 (citing Tr. at 662). The ALJ explained that,

although this work does not rise to the level of substantial gainful activity under the Act, "it does indicate that [Hill's] daily activities have, at least at times, been somewhat greater than [Hill] has generally reported." Id. Contrary to Hill's argument that the ALJ "failed to set forth any description of activities with such specificity as to allow the reviewing court to determine if such activities are inconsistent with [Hill's] claim of disability[,]" Court Doc. 14 at 29-30, the Court concludes that the ALJ properly described and considered Hill's activities working as a cashier.

Third, the ALJ pointed to evidence of Hill's failure to comply with courses of treatment for her conditions, which he may consider as a factor in assessing credibility. Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999). For example, the ALJ noted that:

> [a]lthough [Hill] was receiving care at the Deering Clinic, she was often non-compliant with making medical appointments and with taking her medications as prescribed. The Deering Clinic provided her with free health care through the Community Health Access Partnership (CHAP) program, and she was also getting free or reduced-cost prescription medications through the Medication Assistance Program (MAP). Moreover, there were times when she stopped her medications and was actively using methamphetamine.

Tr. at 17.

Also, the ALJ noted evidence in the record that Hill, after shoulder surgery in 2005, had shown for only 7 out of 23 scheduled physical therapy sessions.  Tr. at 18 (citing Tr. at 388).  This prompted her physical therapist to report that Hill's failure to attend physical therapy sessions "is the primary barrier to her recovery up to this point."  Id.

The ALJ also described two other incidents that indicated Hill was not following prescribed treatment.  In the first, the ALJ referenced an office note from nurse practitioner Sandra Cruickshank at the Deering Clinic.  She noted that Hill informed her that she was not taking any of her medications.  Hill told Cruickshank that she was pleased with her weight loss and did not want to take any more medications.  Tr. at 17 (citing Tr. at 426).

In the second incident, the ALJ noted medical records that indicated that Hill's primary care physician recommended that she immediately be admitted to the hospital.  But Hill waited four days before presenting to the hospital for admission.  Tr. at 17 (citing Tr. at

367).

Fourth, the ALJ described Hill's inconsistent statements regarding her illicit drug use, drug-seeking behavior, medical history, and panic attacks, Tr. at 18-19, 21, 23, all of which he was permitted to consider in evaluating Hill's credibility.  See, e.g., Robbins v. Social Security Admin., 466 F.3d 880, 884 (9th Cir. 2006) ("[C]onflicting or inconsistent testimony concerning alcohol use can contribute to an adverse credibility finding.").  For example, the ALJ noted that: (1) at the hearing, Hill testified that the last time she used illicit drugs was in 1997, but later admitted, after questioning by her attorney, that she had last used drugs in 2005 when she "relapsed" for about one week, Tr. at 18; (2) Hill's medical records contained several instances indicating that she was using narcotic pain medications in excess and was engaging in drug-seeking behavior, Tr. at 18-19, 20, 24 (citing Tr. at 391-92, 409-11); (3) medical records indicated that Hill advised some care providers that she had been clean and sober since 1997, but admitted to others that she had used cocaine as recently as 2006, Tr. at 19 (referencing Tr. at 510-37); and (4) Hill testified that being around

-24-

people caused panic attacks and that she had two episodes of panic attacks in September 2008 that were so severe that she had fallen to the ground – yet when questioned about them, Hill claimed that the attacks had occurred at her home and no one witnessed them, Tr. at 23 (referencing Tr. at 57-60).

And fifth, the ALJ observed that Hill's claims with respect to the frequency, duration, and severity of some of her claimed conditions were inconsistent with her medical records.  Tr. at 23.  For example, the ALJ noted that Hill was reporting to mental health providers that she was having daily panic attacks or having them several times each week. But "the record contained only limited references from [Hill's] therapist or case manager who indicated they had occasionally observed her episodes" and their "comments or observations did not corroborate the frequency that [Hill] has alleged."  Tr. at 23-24.  Also, Dr. Kuka testified that Hill had "severe manic episodes only two times a year which tended to last two to three days," which was neither frequently enough nor of sufficient duration to render her incapable of performing substantial gainful activity on a sustained basis.  Id.

All of the foregoing observations, which the Court finds to be supported by the evidence of record, indicate that the ALJ properly applied ordinary credibility evaluation techniques in assessing Hill's credibility. Smolen, at 1283-84 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)). As noted, the Court cannot substitute its own interpretation of the evidence for the ALJ's interpretation. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citation omitted).

## C.   **Vocational Expert Testimony**

Hill argues that the ALJ erred in failing to adopt the vocational expert's answer to a hypothetical question "which incorporated all limitations of the treating physicians as well as the limitations described by [Hill]" – an answer which stated that Hill would be precluded from performing full-time work. Court Doc. 14 at 30-31.

As discussed in detail *supra*, the Court already has determined that the ALJ did not err in his assessment of Hill's credibility with respect to her symptoms and limitations. Thus, the ALJ was not

-26-

required to include in his hypothetical question to the vocational expert Hill's own version of her symptoms and limitations.  <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1164-65 (9th Cir. 2001)("An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.").  Rather, the ALJ was free to consider the evidence as a whole in making his determination as to Hill's limitations. The Court concludes that he did so, and thus he did not err.

## VII.  <u>CONCLUSION</u>

Based on the foregoing,

**IT IS RECOMMENDED** that the Commissioner's decision denying DIB and SSI be affirmed, Hill's motion for summary judgment (Court Doc. 13) be DENIED, and the Commissioner's motion for summary judgment (Court Doc. 16) be GRANTED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel

within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 9th day of June, 2010.

/s/ Carolyn S. Ostby
United States Magistrate Judge